USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZAMA CAPITAL ADVISORS LP and ZAMA
CAPITAL STRATEGY ADVISORS LP,

          Plaintiffs,

    -against-

UNIVERSAL ENTERTAINMENT
CORPORATION, UE RESORTS
INTERNATIONAL, INC. f/k/a OKADA MANILA
INTERNATIONAL, INC., TIGER RESORT ASIA
LIMITED, TIGER RESORT, LEISURE AND
ENTERTAINMENT, INC., and BYRON YIP,

          Defendants.

1:24-cv-01577-MKV

ORDER DENYING MOTION FOR
RECONSIDERATION

---

MARY KAY VYSKOCIL, United States District Judge:

On March 31, 2025, the Court issued an Opinion and Order granting in part and denying in part Defendants' motion to dismiss the First Amended Complaint ("FAC"). [ECF No. 123 ("March 31 Opinion" or "Op.")]. A detailed recitation of the factual background alleged and procedural history underlying this case are provided in the Court's March 31 Opinion. Op. at 2–12. Plaintiffs now move for reconsideration of a portion of that decision. [ECF Nos. 125, 126 ("Pl. Mem.")].[1] In the pending motion, Plaintiffs contend that "in reaching its holding that Plaintiffs have failed to state claims that UEC breached its obligations to indemnify Plaintiffs for losses on investments" in 26 Capital Acquisition Corp. ("26 Capital") and its sponsor, "the Court overlooked the precise allegations in the Complaint and the precise language of the indemnification provisions in the Engagement Letters, as well as certain matters of controlling law." Pl. Mem. at 4. For the reasons contained herein, Plaintiffs' Motion to Reconsider is DENIED.

---

[1] Defendants filed an opposition to the Reconsideration Motion [ECF No. 130 ("Def. Opp.")] and Plaintiffs filed a reply [ECF No. 132 ("Pl. Reply")].

## LEGAL STANDARD

Reconsideration of an opinion of the Court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Schansman v. Sberbank of Russia PJSC*, No. 19-cv-2985, 2022 WL 4813472, at *1 (S.D.N.Y. Sept. 30, 2022) (citation omitted). The standard must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Girl Scouts of the U.S.A. v. Boy Scouts of America*, No. 18-cv-10287, 2020 WL 6323130, at *1 (S.D.N.Y. Oct. 28, 2020) (citation omitted). "A motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). A motion for reconsideration on the basis of clear error or manifest injustice should generally be denied "unless the moving party can point to controlling decisions or data that the court overlooked" which "might reasonably be expected to alter the conclusion reached by the court." *See Smith v. CVS Albany, LLC*, No. 20-4000, 2022 WL 3022526, at *1 (2d Cir. Aug. 1, 2022) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)).

## DISCUSSION

The breach of contract claims with respect to which Plaintiffs seek reconsideration are those premised on alleged breaches of similar indemnity clauses ("Indemnity Clauses") that exist in two "Engagement Letters" between Plaintiffs and Defendant UEC. Pl. Mem. at 1; Op. at 33; *see also* [ECF Nos. 55-2 (the "First Engagement Letter"), 55-5 (the "Second Engagement Letter")]. Generally, pursuant to the First and Second Engagement Letters, Defendants engaged Plaintiffs to provide consulting services to help UEC find a Special Purpose Acquisition Company ("SPAC")

2

partner for one of its subsidiaries in the United States. Op. at 4, 6. The Court held that Plaintiffs had plausibly stated a breach of the Indemnification Clause with respect to costs incurred while responding to third-party subpoenas in a Delaware lawsuit filed by 26 Capital Acquisition Corporation against the UEC Defendants concerning the SPAC transaction those parties entered (the "Delaware Litigation"). Op. at 11, 39–40, 43. The Court also declined to dismiss Plaintiffs' claims for breach of the Indemnity Clause premised on some other related losses because "Plaintiffs do not precisely delineate what they are seeking to recover" for those other losses so "the Court cannot say as a matter of law" that Plaintiffs may not recover them. Op. at 40, 43. However, the Court held that Plaintiffs did not plausibly allege a claim that the Indemnity Clauses covered their losses with respect to their separate investments in 26 Capital, and its sponsor—entities not named in either contract that Plaintiffs believed would merge with UEC's subsidiary. Op. at 35–39, 43. Plaintiffs take issue with this latter part of the Court's holding. Pl. Mem. at 1.

Plaintiffs do not assert that there has been an intervening change in controlling law or that new evidence has been discovered. Instead, they argue that the Court must grant reconsideration to correct a clear error and prevent manifest injustice. Pl. Mem. at 3. In their motion, Plaintiffs improperly reiterate previously asserted arguments, pointing the Court again to the text of the indemnity agreements and New York case law on the proper scope of indemnity agreements, both of which the Court previously thoroughly considered. *See* Op. at 36–43. The law is clear that "[m]otions for reconsideration 'are not vehicles for taking a second bite at the apple. . . .'" *Ferring B.V. v. Allergan*, Inc., 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (quoting *Rafter v. Liddle,* 288 Fed. App'x. 768, 769 (2d Cir. 2008); *see also Hayles v. Advanced Travel Mgmt. Corp.*, 2004 WL 117597, at *1 (S.D.N.Y. Jan. 26, 2004) (a motion for reconsideration is not an opportunity to "advance new facts, issues, or arguments not previously presented to the Court, or reargue those

issues already considered.").  Plaintiffs have not shown that the Court overlooked any controlling law or factual matters that would warrant reconsideration.  *See Smith*, 2022 WL 3022526, at *1.

**I.    The Court Did Not Overlook Any Controlling Law
That Would Warrant Reconsideration**

Plaintiffs first argue that the Court misconstrued the law when it held that Plaintiffs' losses resulting from investments in 26 Capital and its sponsor were not clearly or expressly covered by the Indemnity Clauses and thus Plaintiffs had not plausibly alleged a claim based on UEC's purported breach of the Indemnity Clause on that basis.  Pl. Mem. at 3–4.  Plaintiffs argue that the Court improperly "found that losses on [the 26 Capital] investments would typically be 'first-party claims' " and erroneously applied to the investment losses the rule that indemnification clauses are not construed to cover first-party claims unless the contract makes it "unmistakably clear" that the parties intended to cover such losses. Pl. Mem. at 2–4.  They argue that this rule applies only to attorneys' fees incurred in "first-party" litigation because of the "American Rule" that parties are responsible for their own attorneys' fees.  Pl. Mem. at 3–4 (citing *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492-93 (N.Y. 1989)).

The Court did explain the "first-party" standard in its March 31 Opinion, but found that Plaintiffs' investment losses were not covered by the relevant indemnity clauses based on other New York case law.  Op. at 37–39.  Citing to settled New York law, the Court held that "[t]he default presumption in New York courts is that indemnification involves liabilities, losses, or claims associated with third-party suits, rather than contractual damages or losses from litigation between the contracting parties themselves."  Op. at 37 (citing *Sage Sys., Inc. v. Liss*, 39 N.Y.3d 27, 31–32, 198 N.E.3d 768, 770– 71 (N.Y. 2022) (citing *Hooper Assocs.*, 74 N.Y.2d 487, 493, 548 N.E.2d 903, 905) and citing *Rothberg v. Phil's Main Roofing*, LLC, No. 14-cv-10195 (NSR), 2017 WL 1162904, at *7 (S.D.N.Y. Mar. 24, 2017) and citing *BNP Paribas Mortg. Corp. v. Bank of*

*America, N.A.*, 778 F. Supp. 2d 375, 416 (S.D.N.Y. 2011)).  The Court also explained that under New York law, indemnification clauses "must be strictly construed so as not to read into [them] any obligations the parties never intended to assume."  Op. at 37 (citing *BNP Paribas*, 778 F. Supp. 2d at 415–16 (citing *Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990)).  Based on this law, the Court held that the text of the Indemnity Clause in the Engagement Letters, which do not specifically identify investment losses, do not clearly or "strictly" cover Plaintiffs' investment losses unrelated to any third-party claim or legal liability.  Op. at 37–39.

Other courts have held similarly.  For instance, the court in *BNP Paribas* held that "the general view of indemnity under New York law" is that it is "a mechanism that enables a party liable on a third-party claim, the indemnitee, to shift that loss to another, the indemnitor."  *BNP Paribas*, 778 F. Supp. 2d at 415–16 (citing *Mas v. Two Bridges Assocs.,* 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (N.Y. 1990) (holding that indemnity means that "a party held legally liable to plaintiff shifts the entire loss to another") and citing *Weissman v. Sinorm Deli, Inc.,* 88 N.Y.2d 437, 446, 646 N.Y.S.2d 308, 669 N.E.2d 242 (N.Y. 1996) ("In an indemnification the entire loss is shifted from the person who has been compelled to pay (the indemnitee) to another upon the imposition of a contingent liability.")).  The court in *BNP Paribas* goes on to hold that "[a]ccordingly, the default presumption in New York courts is that indemnification involves liabilities, losses, or claims associated with third-party suits, rather than contractual damages or losses between the contracting parties themselves."  *See BNP Paribas*, 778 F. Supp. 2d at 416 (citing *Madeira v. Affordable Hous. Found., Inc.,* 323 Fed. Appx. 89, 91 (2d Cir. 2009) (contractual right to indemnification accrues only when the "indemnified party has satisfied the judgment, *i.e.,* suffered a loss")).

In ruling on Defendants' motion to dismiss, this Court considered and explained New York law related to indemnification coverage of "first-party claims" as opposed to "third-party claims" only to demonstrate that indemnity clauses were strictly construed, that the default presumption in New York was that indemnification meant the shifting of costs related to legal liability resulting from a contract, and that Plaintiffs' costs from responding to subpoenas in a separate lawsuit were plausibly indemnified as legal costs related to third-party claims. Op. at 37–38. Contrary to Plaintiffs' assertions, nowhere in the March 31 Opinion did the Court find that Plaintiffs' investment losses amounted to "first-party claims."

Plaintiffs have cited to no controlling case law that a "strict" reading of indemnification clauses is limited only to analyses of whether first-party claims for attorneys' fees are covered by indemnity clauses. More importantly, they have cited to no controlling case in which a court found that costs unrelated to legal liability or litigation were covered by an indemnification clause.

In their Reconsideration Motion Reply, Plaintiffs cite to two opinions issued by courts in the Southern District of New York that find indemnity clauses cover losses related to diminution of value of a company acquired through the relevant contracts, and not only losses related to legal costs or liability. Pl. Reply at 3 (citing *HH Med., Inc. v. Walz*, 2024 WL 2093547, at \*6 (S.D.N.Y. May 9, 2024) and citing *Powers v. Stanley Black & Decker, Inc.*, 137 F. Supp. 3d 358, 386 (S.D.N.Y. 2015)). But those non-legal losses were expressly identified and covered in the relevant indemnification clauses, *see HH Med.*, 2024 WL 2093547, at \*6; *Powers*, 137 F. Supp. 3d at 386, rebutting the default meaning of indemnification. Each case cited by Plaintiffs involved a party that breached the warranties clause of the same contract, and the indemnity clause explicitly named and covered losses arising from the seller's breach of that warranty clause. *HH Med.*, 2024 WL 2093547, at \*6; *Powers*, 137 F. Supp. 3d at 386. Indeed, the court in *HH Medical, Inc.* noted that

6

under New York law indemnity clauses are "strictly construed" and found, in that case, there was a "clear legal duty" to cover the diminution losses. *HH Med.*, 2024 WL 2093547, at *6. That is not the case here. Moreover, neither cited case is controlling and thus each is insufficient support on a motion for reconsideration. *See Smith*, 2022 WL 3022526, at *1; *Shub v. Westchester Cmty. Coll.*, No. 06-cv-8324, 2008 WL 1957731, at *4 (S.D.N.Y. Apr. 28, 2008) ("To the extent that the district court cases cited by defendants are not controlling law we need not consider them."); *Fezzani v. Bear, Stearns & Co.*, No. 99-cv-793, 2004 WL 1781148, at *2 (S.D.N.Y. Aug. 10, 2004) (explaining that a district court case "is not controlling legal authority and thus not a proper basis on which to grant reconsideration").

Plaintiffs' legal arguments here "constitute nothing more than disagreement with [the] Court's explication of the relevant legal standards and application of the standards to the facts of [the] case, which is insufficient on a motion to reconsider." *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 398 (S.D.N.Y. 2018). Accordingly, Plaintiffs have not demonstrated that the Court clearly erred or created manifest injustice in its March 31 Opinion.

## II.    The Court Did Not Overlook Any Factual Matters The Would Warrant Reconsideration

Next, Plaintiffs argue that the Court incorrectly "analyz[ed] the language of the Indemnification Provisions." Pl. Mem. at 4–8. The Court thoroughly analyzed and considered the text of the Indemnification Clauses in the March 31 Opinion and found that, in the context of controlling New York case law, the Indemnification Clauses did not clearly cover Plaintiffs' separate investment losses so as to overcome the default that indemnification means the coverage of legal liability or litigation costs. Op. at 36–39. Indeed, while analyzing the Indemnity Clauses, the Court found that the numerous references to coverage of expenses related to third-party

litigation and liability reinforced the default meaning of indemnification in the Engagement Letters. Op. at 38. The Court also analyzed the contracts in their entirety, finding that "[i]n seeking to recover investment losses and losses incurred in connection with the Engagement Letter and Merger Agreement, Plaintiffs in effect ask the Court to read into the indemnification agreement a true performance fee for" Plaintiffs which did not exist in either Engagement Letter. Op. at 38, 43 (citing *Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404, 920 N.E.2d 359, 363 (N.Y. 2009) ("Courts may not . . . make a new contract for the parties under the guise of interpreting the writing")).

As the Court has explained, a motion for reconsideration is not an opportunity to "reargue [issues] already considered" by the Court, as Plaintiffs attempt to do here. *See Hayles*, 2004 WL 117597, at *1. Moreover, their textual analysis does not establish that the Court clearly erred. First, the presence of the word "or" in the list of indemnified "losses, expenses, claims or proceedings" does not counteract the fact that the clauses are replete with other references to litigation that are in line with New York case law on the presumptive meaning of indemnification, and it certainly does not require the finding that Plaintiffs' investment in 26 Capital and its sponsor were covered. Pl. Mem. at 6.

Further, the fact that the Indemnification Clause in the First Engagement Letter contains language not in the Second Engagement Letter does not require the finding that Plaintiffs' investment in 26 Capital and its sponsor was covered. Pl. Mem. at 7. The Second Engagement Letter obligates UEC to indemnify Zama Capital Strategy Advisors for "losses, expenses, claims or proceedings . . . related to or arising out of the Engagement or conduct in connection therewith." Second Engagement Letter, Annex A. The First Engagement Letter however, obligates UEC to indemnify Zama Capital Advisors LP for "losses, expenses, claims or proceedings . . . related to

or arising out of the Engagement *or any Transaction* or conduct in connection therewith."  First Engagement Letter, Annex A (emphasis added).  As Plaintiffs point out, "Transaction" is defined to mean "any merger, share exchange, asset acquisition or other acquisition, share purchase, reorganization or business combination between TRLEI . . . and a SPAC."  First Engagement Letter at 1.  The subject investments here were between Plaintiffs and 26 Capital and its sponsor and, even if Plaintiffs' investments can be defined as a "Transaction," their investments in their own interest can't reasonably be construed as "in connection" with the work they were engaged to do on UEC's behalf.  Moreover, the difference does not alter the Court's analysis that the Indemnification Clauses, read strictly and in the context of New York case law, do not plausibly cover Plaintiffs' investments.  More importantly, the Court considered the difference between the two Engagement Letters while reaching its decision in the March 31 Opinion, as evidenced by the Court's questions on the difference posed to Plaintiffs at oral argument.  [ECF No. 119 ("Tr.") at 43–44]. Accordingly, Plaintiffs' attempt at analyzing again text the Court has already considered does not demonstrate that the Court clearly erred or created manifest injustice in this portion of its March 31 Opinion.

Based on the analysis above and in the March 31 Opinion demonstrating its interpretation of the Indemnity Clauses, the Court declines to find, as Plaintiffs argue in the alternative, that the Indemnity Clauses were ambiguous.  Pl. Mem. at 8–9.  Accordingly, the Court will not address Plaintiffs' arguments regarding the subjective intent of the drafting parties.  Pl. Mem. at 7, 8; *see, e.g.*, *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244, 21 N.E.3d 1000, 1003 (N.Y. 2014) ("Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole.").

In sum, the Court does not find clear error or manifest injustice in its March 31 Opinion granting Defendants' motion to dismiss Plaintiffs' breach of contract claims to the extent they seek to recover losses on investments in 26 Capital and its sponsor.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED.  The Clerk of Court is respectfully requested to close docket entry 125.

**SO ORDERED.**

**Dated: December 16, 2025**
       **New York, New York**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**